UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-80299-Civ-SCOLA

THE ZODIAC GROUP, INC. et al.,

    Plaintiffs,

vs.

AXIS SURPLUS INSURANCE CO.,

    Defendant.
_____/

## ORDER GRANTING MOTION TO DISMISS

THIS MATTER is before the Court upon the Motion to Dismiss [ECF No. 20], filed by Defendant Axis Surplus Insurance Co. ("Axis"). For the reasons set forth below, the Motion is granted.

## Introduction

This is a declaratory judgment action concerning the extent of insurance coverage. In 2001, Plaintiff Zodiac Group ("Zodiac") entered into an agreement with GTC Enterprises for the endorsement services of Linda Georgian ("Georgian") relating to telephone psychic services offered through Zodiac. This agreement ended in March 2007.

Thereafter, on April 25, 2008, Georgian sued Zodiac in state court for allegedly continuing to use her name and likeness to promote its psychic services. The state court complaint raised claims for unauthorized publication of image and name, invasion of privacy, and injunctive relief to prevent Zodiac's continued use of Georgian's name and likeness. The state court lawsuit was dismissed for lack of prosecution on November 13, 2009.

A few months later, on January 12, 2010, Georgian sued Zodiac and David and Daniel Felger in Florida federal court. The federal complaint asserted claims for violation of the Lanham Act, unauthorized publication of image and name, violation of Florida's Deceptive and Unfair Trade Practices Act, civil RICO, RICO conspiracy, and unjust enrichment. The federal action, like the state court suit, was predicated on Zodiac's allegedly unauthorized use of

Georgian's name and its false claims that she continued to endorse its psychic services. The federal lawsuit ultimately ended in partial dismissal and then settlement of the remaining claims.

On September 30, 2008, Zodiac applied for a professional liability insurance policy with Axis. The application required Zodiac to disclose any pending or prior claims against it for the previous five years, as well as "any actual or alleged fact, circumstance, situation, error or omission, which may reasonably be expected to result in a claim being made against [it.]" *See* Ins. Appl. ¶ 11 [ECF No. 20-3]. In response to the question about pending or prior claims, Zodiac disclosed the Georgian state court suit as follows: "Former contract celebrity claimed unauthorized use of her name after their [sic] relationship ended. Allegations of invasion of privacy & injunctive relief." *See* Suppl. Claim Info. Form ¶ 8 [ECF No. 20-4]. Zodiac responded "no" to the question about whether it knew of any facts or circumstances that might reasonably result in a claim being made. *See* Ins. Appl. ¶ 11.

Based on the information disclosed in the application, Axis issued a claims-made professional liability insurance policy to Zodiac, with a "Policy Period" inception date of October 1, 2008 and a retroactive coverage date of March 6, 1998. The policy was renewed, with an inception date of October 1, 2009 and retroactive coverage date of March 6, 1998. The policy's coverage for "Claims First Made" would apply "when a written Claim is *first made* against any insured during the Policy Period," so long as the claim "arise[s] from a Wrongful Act committed *during the Policy Period*." *See* Policy at 4 [ECF No. 1-3] (emphasis supplied). The policy specified that "[t]he Company will consider a Claim to be *first made* against an Insured when a written Claim is *first received* by any Insured." *See id.* (emphasis supplied).

As to "Prior Wrongful Acts," the policy provided coverage for any "written Claim first made against any Insured arising from a Wrongful Act committed between the Retroactive Date and the Inception Date of the policy," but only if: 1) the claim is first made during the "Policy Period"; 2) the insured did not know, before the policy's earliest inception date, "of a circumstance that could reasonably be expected to lead to the Claim"; and 3) the claim is not covered by any "other valid and collectible insurance." *See id.* at 4-5. The policy also specified that "[a]ll Claims arising from the same Wrongful Act will be deemed to have been made on the earlier of" either "[t]he date the first of those Claims is made against any Insured," or "[t]he first date the [insurance company] receives the Insured's written notice of the Wrongful Act." *See id.* at 6.

Zodiac filed this lawsuit seeking declaratory and injunctive relief against Axis as to the extent of insurance coverage.  The central question is whether the insurance policy in question provides coverage relating to Georgian's federal lawsuit and, if so, whether Zodiac is entitled to damages for breach of contract against Axis in the form of legal fees and expenses.  Axis denied coverage for defense and indemnification because the allegations in the federal lawsuit stem from her 2008 state court action, meaning that the claim was made prior to the "Policy Period."  Compl. ¶¶ 21, 23.  Coverage was also denied in part on the ground that the allegations relating to fraud and unlawful gain are excluded under the policy.  *See id.*

## Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the district court must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  While the scope of review is generally limited to the four corners of the complaint, the court is permitted to consider any exhibits attached to the pleadings.  *See Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006).  The court may also consider any documents attached to the defendant's motion to dismiss, so long as they are central to the plaintiff's claims and undisputed.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  In addition, the court may take judicial notice of certain public records (such as records of prior legal proceedings), so long as their accuracy and authenticity is not reasonably subject to dispute.  *See Horne v. Potter*, 392 F. App'x 800, 802 (11th Cir. 2010).

To survive a motion to dismiss, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Similarly, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do.  *Id.*

**Legal Analysis**

Under Florida law,[1] "insurance contracts are construed in accordance with the plain language of the policies as bargained for by the parties." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000). "Where the policy language is plain and unambiguous, no special rule of construction or interpretation applies, and the court should give the plain language in the contract the meaning it clearly expresses." *N. Pointe Cas. Ins. Co. v. M & S Tractor Servs., Inc.*, 62 So. 3d 1281, 1282 (Fla. 2d DCA 2011). "Courts are not free to rewrite an insurance policy or to add terms or meaning to it." *Royal Ins. Co. v. Latin Am. Aviation Servs., Inc.*, 210 F.3d 1348, 1351 (11th Cir. 2000); *see also Heritage Ins. Co. of Am. v. Cilano*, 433 So. 2d 1334, 1335 (Fla. 4th DCA 1983) ("When the terms of an insurance policy are clear and unambiguous the terms must be applied as written, the court not being free to reshape the agreement of the parties.").

In this case, Axis is entitled to dismissal because the plain language of the insurance policy affords no coverage here. In April 2008, Georgian sued Zodiac for unauthorized use of her name and likeness. The subsequent federal lawsuit filed in January 2010 was predicated on the same alleged misconduct, even though some additional and different causes of action were asserted. The first insurance policy went into effect in October 2008 and provided coverage for "Prior Wrongful Acts" arising as far back as March 1998, but only if the claim was first made during the "Policy Period" ***and*** the insured did not know, prior to the policy's inception date, "of a circumstance that could reasonably be expected to lead to the Claim." *See* Policy at 4-5.

Here, those conditions are not satisfied. The claim was not first made during the "Policy Period."[2] Under the policy, all claims arising from the same "Wrongful Act"[3] are deemed to have been made on the earlier of "[t]he date the first of those Claims is made against any Insured," or "[t]he first date the Company receives the Insured's written notice of the Wrongful Act." *See* Policy at 6. Because Georgian's federal lawsuit was premised on the same facts and

---

[1] Because this Court sits in diversity in this case, it must apply the law of the forum state, which is Florida. *See Living Legends Ret. Ctr., Inc. v. Lexington Ins. Co.*, 208 F. App'x 805, 807 (11th Cir. 2006) ("The district court ruling in this case turned on the interpretation of an insurance contract. Since the court was sitting in diversity, it applied the law of the forum state, Florida.").

[2] The term "Policy Period" means the period of time from the policy's inception date to the policy's expiration date.

[3] The policy makes clear that all "Wrongful Acts" taking place between the retroactive date and the end of the "Policy Period" and which are related by common facts and circumstance "will be treated as one Wrongful Act."

alleged misconduct as the state court action, "[t]he date the first of those Claims [was] made against any Insured" is April 2008, when Georgian filed the state court lawsuit. Because the policy did not take effect until October 2008, the claim was not first made during the "Policy Period."

Nor is it true that Zodiac had no knowledge, prior to the policy's inception date, "of a circumstance that could reasonably be expected to lead to the Claim." *See id.* That is plainly false because Zodiac in fact disclosed on its application for insurance the underlying dispute with Georgian that later materialized into the federal lawsuit. In response to the question about pending or prior claims, Zodiac wrote that a "[f]ormer contract celebrity claimed unauthorized use of her name after their relationship ended," and that the suit involved "[a]llegations of invasion of privacy & injunctive relief." *See* Suppl. Claim Info. Form ¶ 8. Although Zodiac responded "no" to the question about whether it knew of any facts or circumstances that might reasonably result in a future claim being made, that obviously does not lessen its knowledge about the April 2008 state court lawsuit and the circumstances and facts underlying it. Zodiac does not argue otherwise.[4]

As Axis correctly notes, "[t]he State Court Complaint and the claims in the [federal lawsuit] are unquestionably 'related by common facts, circumstances, transactions, events and/or decisions,' *i.e.*, the use of [Georgian's] name and likeness, such that the activities must be treated as one wrongful act excluding coverage under the Policy." *See* Mot. at 15. This is true even though the causes of action and claims for relief were not exactly parallel in both cases, because all of the claims in both cases shared the same common factual underpinning: Zodiac's allegedly unauthorized use of Georgian's name and likeness after their agreement ended. There clearly is no coverage under the policy for the federal lawsuit.[5]

---

[4] Zodiac does not argue that the facts underlying the state court suit could not reasonably be expected to lead to another claim given that the state court suit was actually pending at the time it applied for insurance. Even if that argument were made and even if it had merit (a conclusion that the Court does not reach), it would make little difference because, as noted above, the claim was not first made during the "Policy Period." For coverage to exist, both conditions must be satisfied – which is not the case here.

[5] Because the federal lawsuit does not fall within the scope of coverage, there is no occasion to consider whether any policy exclusions might apply to bar such coverage. Only when coverage exists is it necessary to address the application of policy exclusions. *See Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1309 (11th Cir. 2012) (where claim was not covered, "we need not determine whether any policy exclusions or exceptions apply"); *see also Coleman v. Valley Forge Ins. Co.*, 432 So. 2d 1368, 1370-71 (Fla. 2d DCA 1983) ("An exclusion, by its nature, serves to limit or diminish the scope of coverage otherwise provided in the policy."). Therefore, the Court declines to address the parties' arguments concerning policy exclusions.

### Conclusion

This Court is obliged to enforce the plain policy language as written. *See Prudential Prop. & Cas. Ins. Co. v. Swindal*, 622 So. 2d 467, 473 (Fla. 1993) (court cannot "judicially rewrite an insured's policy," as "contracts of insurance must be construed by resorting to the plain language of the policies as freely bargained for by the parties"). Here, there is no coverage under the plain language of the policy because Zodiac's claim was first made in 2008, not during the policy's provided-for claims period. The federal lawsuit arises out of the prior claim because the two are related by "common facts, circumstances, transactions, events and/or decisions," and coverage cannot now be revived. As such, the instant case must be dismissed.

Accordingly, for the reasons explained above, Axis's Motion to Dismiss [ECF No. 20] is hereby **GRANTED** and this case is **DISMISSED** with prejudice. The Clerk shall **CLOSE** this matter. To the extent there are any remaining pending motions on the docket, they are all **DENIED AS MOOT**.

**DONE and ORDERED** in chambers at Miami, Florida, on December 13, 2012.

_____
ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE

Copies to:
*U.S. Magistrate Judge*
*Counsel of record*